## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| INTERNATIONAL ASSOCIATION | ) |
| Of MACHINISTS and AEROSPACE | ) |
| WORKERS | ) |
| 9000 Machinists Place | ) |
| Upper Marlboro, Maryland | ) |
| 20772-2687 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BONNIE WERNER-MASUDA | ) |
| 749 CALLE LAS COLINAS | ) |
| THOUSAND OAKS, CA 91320-1917, | ) |
| | ) |
| UNION OF INDEPENDENT FLIGHT | ) |
| ATTENDANTS | ) |
| PO Box 1243 | ) |
| Laconia, New Hampshire, 03247, | ) |
| | ) |
| McCORMICK ADVISORY GROUP | ) |
| 67 Water Street | ) |
| Laconia, New Hampshire, 03247, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

### COMPLAINT FOR PRELIMINARY AND INJUNCTIVE RELIEF

1.      This case involves the computer theft from the International Association of

Machinists & Aerospace Workers, AFL-CIO ("IAM"), of a confidential IAM

membership list by competitors defendants Bonnie Werner-Masuda ("Werner-Masuda"),

the Union of Independent Flight Attendants ("UIFA"), and the McCormick Advisory

Group ("MAG").  The membership list that was taken is vital to the IAM's ability to

conduct its business of representing its members.  The IAM's strength as an organization

derives, in large part, from its ability to communicate with its members.   Such

communications are central to the IAM's ability to effectively represent its members and

negotiate and administer its collective bargaining agreements.  For that very reason, the

IAM has devoted considerable time and resources over a thirteen-year period to

developing and protecting the confidential, critical membership list that defendants have

taken and are now using.  IAM seeks an immediate temporary restraining order

preventing defendants from making any further use of IAM's confidential membership

list, preliminary and permanent injunctive relief to the same end, and damages for the

unlawful theft of the IAM's property.

**PARTIES & PERSONS IN INTEREST**

2.      The IAM is an international labor organization that represents

approximately 700,000 employees in various industries and occupations throughout the

United States and Canada, including aerospace, air transportation, machine and

manufacturing, automotive, and others.  It maintains its headquarters, referred to as the

"Grand Lodge" or the "International," at 9000 Machinists Place, Upper Marlboro, MD

20772.

3.      The IAM has various subordinate bodies called District and Local Lodges.

There are approximately 1,000 Locals in the IAM, and more than 80 Districts, comprised

of two or more locals.  District lodges generally service, for purposes of collective

2

bargaining, the members of their affiliated local lodges on a geographical or industry-wide basis.  The subordinate bodies are governed by the IAM Constitution and, to the extent not inconsistent with that Constitution, by their own bylaws.

4.     IAM Local Lodge 2339N ("Lodge 2339N"), is one of four IAM locals that together provide representational services to the approximately 10,300 flight attendants who work for Continental or ExpressJet.  Lodge 2339N, alone, represents approximately 4,000 Continental and ExpressJet flight attendants who are based at Newark International Airport.  Lodge 2339N is affiliated with IAM District Lodge 142.

5.     From April 2003 to May 2004, Defendant Werner-Masuda was the Secretary-Treasurer of Lodge 2339N.   While Werner-Masuda held this position, she accessed IAM's proprietary password protected website to retrieve confidential IAM membership information for the purpose of organizing a new union, defendant UIFA, to replace the IAM as the union representing the Continental and ExpressJet flight attendants.  On or about May 16, 2004, Werner-Masuda resigned from her post with Lodge 2339N.  Werner-Masuda now holds herself out as the interim President of Defendant UIFA.  At all relevant times, Werner-Masuda acted as defendant UIFA's agent.

6.     Defendant UIFA is a recently formed entity that, according to its website, has been created for the sole purpose of challenging IAM's representation of the Continental and ExpressJet flight attendants by soliciting those flight attendants to

3

designate UIFA rather than IAM as their union representative.  UIFA's efforts in this regard have included mailing information to Continental and ExpressJet flight attendants who reside in Maryland.

7.      Defendant MAG is a New Hampshire for-profit corporation, headquartered at 67 Water Street, Laconia, New Hampshire.  MAG is staffing UIFA's effort to replace the IAM as the representative of the Continental/ExpressJet flight attendants.  As part of that effort, MAG and UIFA have intentionally reached out to residents of Maryland, in part, by mailing UIFA materials to Maryland residents.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it raises federal claims and over the state law claims pursuant to its supplementary jurisdiction.

9.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events at issue occurred, and all of the property that is the subject of this action is situated, in Upper Marlboro, Maryland, which is within the jurisdiction of this Court.

## FACTS

10.     The IAM has served as the union representative of the Continental and ExpressJet flight attendants  -- a unit of over 10,000 individuals who live all over the world -- since 1991.  Over the past thirteen years, the IAM has expended considerable resources on developing and maintaining an up–to-date and accurate list of the names and

4

addresses of those flight attendants, which is not publicly available information and can be collected only by asking each and every Continental and ExpressJet flight attendant for that information.   IAM has had no assistance in that effort; it does not even receive membership address information from Continental or ExpressJet for those flight attendants.

11.     The IAM has devoted such extensive resources and time to the task of compiling the Continental/ExpressJet membership list because such a list is central to its ability to represent its members, which is the only purpose for which the IAM exists.

12.     At the time the IAM was certified as the representative of the Continental/Express Jet flight attendants in 1991, no comprehensive list of those flight attendants existed.  Rather, IAM inherited from the union that had previously represented those flight attendants, a very sparse membership list that was missing names and addresses for most of the flight attendants in the unit.  Over the next several years, the IAM devoted considerable resources to filling in the missing information on that list, which had to be done on a person–by-person basis by asking each flight attendant to provide the IAM with his or her current name and address.  During the 2001-2002 time period, IAM devoted a full time staff person to the effort who was assisted by no fewer than three other IAM Grand Lodge staff members as well as staff at the District Lodge level.  Since that time, IAM has continued to devote significant resources to updating and

maintaining the Continental/ExpressJet list; the full time work of one of District Lodge 142's secretaries is to maintain and update that membership list.

13.     The IAM holds the Continental/ExpressJet membership list in confidence and does not circulate or sell that list.  Under the IAM's official policies, no IAM membership list may be used for anything but legitimate IAM purposes.

14.     The Continental/ExpressJet membership list is maintained by the IAM  on its computer system at the IAM's headquarters in Upper Marlboro, Maryland.  The portion of the computer server on which the Continental/ExpressJet membership list is stored is not publicly accessible and may be accessed only by certain IAM employees and officers using passwords provided to them.  None of the IAM employees or officers who have access to the Continental membership list is authorized to use or disclose that list for any purpose other than to carry out the legitimate business of the IAM.

15.     The list is also stored on IAM's private, secure, website, which is called "VLodge."  VLodge is a password protected site that can be entered only by certain IAM officers and employees who have provided the IAM with a signed registration agreement stating that they "agree not to use the information provided through VLodge for any purpose that would be contrary to the policies and procedures established by the Constitution of the [IAM]."  <u>See</u> Exhibit A, VLodge Registration Agreement.  That restriction is not just a restriction on the uses to which VLodge information can be put but

on the purposes for which VLodge can be accessed – i.e., only for purposes consistent with the IAM Constitution.

16.     Even officers who sign a VLodge registration agreement can only access VLodge to the extent required to carry out their legitimate IAM duties.  Thus, for example, not all Local Lodge officers have access on VLodge to membership information.  Only Local Lodge financial officers have access to membership information so they can carry out their responsibilities regarding dues collection.  Moreover, as a rule, even the Local Lodge financial officers may only access membership information for their Local.  The only exception to this rule is for Local Lodge financial officers whose locals represent members in the transportation sector.  Because those members change bases, and therefore change locals, frequently, those Local Lodge officers may access membership information for all individuals who work in the Transportation Sector but for no other individuals.

17.     During her tenure as Secretary-Treasurer of Lodge 2339N, Defendant Werner-Masuda was authorized to access the Continental/ExpressJet membership list through VLodge for legitimate IAM purposes.  Werner-Masuda signed the VLodge registration agreement in order to obtain from IAM the user identification number and password required to access VLodge.  A true and correct copy of the registration agreement that she signed is attached hereto as Exhibit A.

18.     By signing the registration agreement Werner-Masuda agreed not to access or use VLodge "for any purpose that would be contrary to the policies and procedures established by the [IAM] Constitution."  The registration agreement that Werner-Masuda signed also specified that she was responsible for safeguarding her VLodge user identification number and password by not "giv[ing] out [her] identifying information," leav[ing] her "password information display[ed]" or leaving VLodge open when she left her computer.  Id.

19.     Upon receiving Werner-Masuda's signed registration agreement in or about June of 2003, IAM issued Werner-Masuda a user identification number of bx066857 and a password to enter VLodge.

20.     IAM issues a unique password/user identification number to every VLodge user and keeps that information in a secure file, to which only the VLodge administrator or her staff has access.

21.     Every time Werner-Masuda signed on to VLodge, she was reminded by the VLodge welcoming screen on which she signed in that "VLodge is a proprietary and secured site to be used only by authorized persons who have received a valid user id and password and signed the registration agreement.  Any other access is strictly prohibited. Violators may be subject to legal action."  A true and correct reproduction of that welcoming screen is attached hereto as Exhibit B.

22.     Over the time period from March through May of 2004, Werner-Masuda used her user identification number and password to log on to VLodge and search for confidential IAM membership information over 10,000 times.  To do so, Werner-Masuda used the VLodge member search tool, which allows retrieval of a particular members' name or a list of the names of the members in each local.  Address information for each member can then be obtained only by clicking on each member's name.

23.     Upon closer examination with more sophisticated software, IAM determined that Werner-Masuda's user identification number had been used to click on the VLodge member search tool approximately 10,000 between March of 2004 and May of 2004 in order to search for the names and addresses of every single member in one of four different IAM Local Lodges (LL 2339N, 2339H, 2339C, and 2339G).  All four of the IAM Local Lodges from which membership information was obtained were Lodges that represent Continental or ExpressJet flight attendants.

24.     The membership of those four Local Lodges comprise the exact membership that UIFA targeted in its June/July 2004 mailing and which UIFA is attempting to organize into a rival union.

25.     The use of Werner-Masuda's user identification number in this manner exacted a toll on the physical capacity of VLodge, consuming 231.12 megabytes of bandwidth on the system and thereby preventing others from using that bandwidth for legitimate IAM purposes.

26.     The searches that were conducted using Werner-Masuda's user identification number were conducted in interstate commerce in that Werner-Masuda's user identification number was used to log on to VLodge from multiple computers outside of the state of Maryland using the services of different internet service providers each of which utilizes interstate communications facilities.

27     The number of times that Werner-Masuda's user identification number was used to access IAM membership information from VLodge is extremely unusual and cannot be explained on the theory that Werner-Masuda was using her identification number to conduct legitimate IAM business.

28.     Over the last several weeks,  IAM has  received complaints that its Continental and ExpressJet members have received a mailing from UIFA highly critical of the IAM, urging those members to sign an authorization card calling for a vote for new union representation of the Continental/ExpressJet flight attendants by UIFA.  The mailing, a true and correct copy of which is attached as Exhibit C, bore a return address of P.O. Box 1243, Laconia, New Hampshire, 03247.  On information and belief, that P.O. Box was opened and is maintained for UIFA by MAG, which also arranged to print and mail Exhibit C to every individual on IAM's confidential list of Continental/ExpressJet flight attendants.

29.     That IAM's confidential Continental/ExpressJet membership  list was used by UIFA and MAG for the July 2004 mailing is demonstrated by the fact that over sixty

10

IAM members have complained to the IAM that they received the UIFA mailing at an address or in a name that they had only given to the IAM and to no other entity or organization.  Thus, for example, IAM member Robert Sayles has declared under penalty of perjury that he received the UIFA mailing at an address that he had given solely to the IAM and which he had never given to UIFA or any other organization.  IAM Grand Lodge Representative Carla Winkler has declared under penalty of perjury that she received the UIFA mailing which used her name in a form that she had given solely to the IAM and which she had never given to UIFA or any other organization.

30.    The use of VLodge to obtain IAM's confidential Continental mailing list violated the registration agreement that Werner-Masuda signed to gain access to VLodge. Under that agreement, as noted above, Werner-Masuda committed herself not to access or use VLodge for purposes "contrary to the policies and procedures of the [IAM] Constitution."  See supra ¶ 18.  The retrieval from VLodge of confidential IAM membership information for the purpose of forming a rival organization, UIFA, violates the IAM Constitution, which  prohibits IAM members and officers from engaging in "dual unionism or support[ing] . . . organizations inimical to the interests of the IAM." IAM Const., Art. A § 5, Art. I § 1.  The retrieval of that information from VLodge also violates IAM's policy prohibiting the use of the IAM membership lists for any purpose other than legitimate IAM business.

31.     When Werner-Masuda used her user identification number to sign on to VLodge and obtain confidential IAM membership information for purposes of organizing a rival union (UIFA), Werner-Masuda acted contrary to her authorization to utilize VLodge.  Even if Werner-Masuda did not access some or all of this information herself, but rather, gave her user identification number to others to obtain confidential IAM membership information for purposes of organizing UIFA, Werner-Masuda would still have been acting contrary to her authorization to access VLodge, as she had no authority to allow anyone to use her VLodge user identification number and password.

32.     The defendants' use of IAM's confidential mailing list has and will continue, unless restrained, to result in irreparable harm to the IAM by depriving the union of its exclusive right to contact its members using the confidential mailing list that it has devoted substantial resources to compiling and safeguarding over the years.  That list has significant economic value to the IAM precisely because it is confidential. Neither MAG, UIFA, nor Werner-Masuda could readily obtain the information on that list from any publicly available source.  Rather defendants would have to go through the exact same laborious, time-consuming and expensive organizing work that the IAM has undertaken over the past decade to compile person by person an accurate up to date list of the Continental and ExpressJet flight attendants.

33.     The defendants' actions have caused harm to the good will and name of the

IAM by suggesting to IAM's members that the IAM has not properly safeguarded the

confidential address information each member has provided to the IAM.

34.     As a direct result of Werner-Masuda's unauthorized use of VLodge to

obtain the confidential Continental list, IAM has incurred "losses" exceeding $5,000

within the meaning of the federal Computer Fraud and Abuse Act (see infra ¶¶ 38-42)

including the costs it has had to spend to determine the extent of Werner-Masuda's

unauthorized use of VLodge.

**COUNT ONE**
**Violation of the Federal Stored Communication Act**
**18 U.S.C. §§ 2701, 2707**

35.     The foregoing paragraphs 1-34 are realleged as if fully set forth herein.

36.     The IAM computer system is a facility through which an electronic

communication service is provided (viz., VLodge) within the meaning of the Stored

Communications Act, 18 U.S.C. § 2701(1).

37.     By intentionally exceeding her authorization to access VLodge by

obtaining the confidential Continental/ExpressJet membership list in direct contradiction

to the limits on her access to VLodge, Werner-Masuda and UIFA (by and through the

actions of Werner-Masuda) violated the Stored Communications Act, 18 U.S.C. §

2701(2).

**COUNT TWO**

13

**Violation of the Federal Computer Fraud and Abuse Act
18 U.S.C. § 1030**

38.     The foregoing paragraphs 1-37 are realleged herein as if fully set forth.

39.     The IAM computer system, including VLodge, is a computer operated in interstate commerce within the meaning of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, in that IAM officers who have signed and thereby agreed to abide by the terms of the VLodge registration agreement can and do access VLodge from locations all across the country.

40.     By intentionally accessing VLodge in a manner that exceeded her authorization in that she did so in direct contradiction to the limits on her VLodge access, Werner-Masuda and UIFA (by and through Werner-Masuda) violated subsection (a)(2)(C) of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C).

41.     By intentionally accessing VLodge for the purpose of obtaining something of value (viz., the confidential Continental/ExpressJet membership list), while representing to the IAM that she was using VLodge solely for legitimate IAM purposes (by virtue of her assent to the VLodge registration agreement), Werner-Masuda and UIFA (by and through Werner-Masuda) committed computer fraud in violation of subsection (a)(4) of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

42.     By intentionally accessing VLodge in a manner that exceeded her authorization in that she did so in direct contradiction to the limits on her VLodge access, and thereby causing the IAM damage, Werner-Masuda and UIFA (by and through

Werner-Masuda) violated subsection (a)(5)(A)(iii) of the Computer Fraud and Abuse
Act, 18 U.S.C. § 1030(a)(5)(A)(iii).

## COUNT THREE
## Breach of Contract

43.     The foregoing paragraphs 1-42 are realleged herein as if fully set forth.

44.     By accepting IAM's offer of access to VLodge under the terms and
conditions of service set forth in the VLodge registration agreement, Werner-Masuda
entered into a binding contract with IAM to use VLodge only for the purposes authorized
under the registration agreement.

45.     By using VLodge to obtain information (the confidential
Continental/ExpressJet membership list) for the purpose of organizing a rival union,
Werner-Masuda breached her contractual obligations to the IAM and caused the IAM
harm.

## COUNT FOUR
## Violation of the Maryland Uniform Trade Secrets Act
## Md. Code § 11-1201, et seq.

46.     The foregoing paragraphs 1-45 are realleged herein as if fully set forth.

47.     IAM's Continental/ExpressJet list is a trade secret in that the list has
economic value to the IAM (as evidenced by, e.g., the considerable effort and resources
IAM expended on compiling and updating the list) and is kept in confidence by IAM
under measures reasonably calculated to maintain the secrecy of that list.

48.    Werner-Masuda improperly obtained that trade secret by accessing VLodge in a manner that exceeded and in fact contradicted her authorization to do so and thereby violated Md. Code § 11-1201(c)(1).

49.    Werner-Masuda provided that trade secret to UIFA and, in turn, to MAG as evidenced by the subsequent mailing performed by MAG for UIFA to the individuals listed on, and only on, the confidential IAM Continental/ExpressJet membership list. Werner-Masuda's disclosure of the list to UIFA and MAG violated Md. Code § 11-1201(c)(2).

50.    MAG and UIFA's use of that trade secret (the confidential IAM Continental/ExpressJet membership list) violated Md. Code § 11-1201(c)(2) in that they knew or should have known that Werner-Masuda utilized improper means to obtain that list and/or acquired access to that list under circumstances giving rise to a duty to maintain its secrecy.

**COUNT FIVE**
**Trespass on Chattels**

51.    The foregoing paragraphs 1-50 are realleged herein as if fully set forth.

52.    By intentionally exceeding her authorization to access information in VLodge, Werner-Masuda and UIFA (by and through Werner-Masuda) trespassed upon IAM's property by both (i) obtaining a copy of the IAM's confidential Continental/ExpressJet list; and (ii) interfering with the IAM's Maryland computer system and depriving the IAM of system capacity including bandwith that could have

16

been used by other VLodge users.  By these actions, Werner-Masuda and UIFA (by and through Werner-Masuda) trespassed upon the IAM's property causing the union harm.

**COUNT SIX**
**Fraud**

53.     The foregoing paragraphs 1-52 are realleged herein as if fully set forth.

54.     By obtaining access to VLodge by representing falsely that she would not use the information contained therein for any purpose contrary to the IAM Constitution, only to utilize her access to steal IAM's confidential Continental/ExpressJet membership list causing irreparable harm to the IAM, Werner-Masuda and UIFA (by and through Werner-Masuda) committed common law fraud against the IAM.

**COUNT SEVEN**
**Conversion**

55.     The foregoing paragraphs 1-54 are realleged herein as if fully set forth.

56.     By intentionally using IAM's confidential Continental/ExpressJet membership list in order to raid the IAM and organize those IAM members into a rival union, defendants have so seriously deprived the IAM of its property interest in that membership list as to rob the list remaining in the IAM's possession of its essential character.  Defendants have thereby converted the IAM's property causing the union harm.

**COUNT EIGHT**
**UNJUST ENRICHMENT**

57.     The foregoing paragraphs 1-56 are realleged herein as if fully set forth.

17

58.     Defendants unjustly have valuable property of the IAM – <u>viz.</u>, the confidential Continental/ExpressJet membership list – and it would be inequitable to allow defendants to retain that property.

**PRAYER FOR RELIEF**

WHEREFORE, IAM respectfully requests that this Court:

(1)     Enter an order temporarily restraining and preliminarily and permanently enjoining defendants from making any further use of the confidential IAM Continental/ExpressJet list; requiring defendants to return to IAM all copies of that list; requiring defendants to disclose to the IAM with whom, if anyone, defendants have shared that list; and restraining defendants from conducting any further mass mailings to the Continental/ExpressJet flight attendants absent proof that the list used for such a mailing was compiled from sources entirely independent of IAM's confidential Continental/ExpressJet membership list.

(2)     Award IAM damages, including exemplary and punitive damages, in the full amount permitted under the law.

(3)     Award IAM costs and attorneys' fees to the full extent permitted under the law.

(4)     Award the IAM such other relief as the Court deems just.

Respectfully submitted,

18

_____
Jeffrey Freund
W. Gary Kohlman
Alice O'Brien
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W.
Washington D.C. 20005
(202) 842-2600 (p)
(202) 842-1888 (f)

Dated:  August 4, 2004